<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOHN JOSEPH YAGER,**<br><br>    *Plaintiff,*<br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    *Defendant.* | **Civil Action No. 21-20093**<br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

  **THIS MATTER** comes before the Court by way of Plaintiff John Joseph Yager's ("Plaintiff") request for review of Administrative Law Judge Kevin Kenneally's (the "ALJ") decision regarding Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits, pursuant to 42 U.S.C. §§ 1383(c)(3); 42 U.S.C. § 423; and 405(g). For the reasons set forth in this Opinion, the decision by the Commissioner of Social Security ("Commissioner") is **AFFIRMED.**

**I. STANDARD OF REVIEW AND APPLICABLE LAW**

  **A. Standard of Review**

  This Court has jurisdiction to review final decisions by the Commissioner pursuant to 42 U.S.C. § 405(g). The Commissioner's application of law is subject to plenary review, but factual findings must be affirmed if they are supported by substantial evidence. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

(1971). As such, substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). This is a deferential standard and places a significant limitation upon the District Court's scope of review, prohibiting the Court from re-weighing evidence or imposing its own factual determination. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011).

To determine whether there is substantial evidence to support the Commissioner's decision, this Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the Plaintiff's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. Appx. 167 (3d Cir. 2014).

The ALJ must explain his or her reasoning such that the final determination is amenable to meaningful review. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). The Third Circuit has held, however, that an ALJ need not use particular language or adhere to a particular format when conducting his or her analysis, as long as there is "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).[1]

---

[1] Plaintiff requests this Court apply the standard set forth in Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983), wherein the Third Circuit noted that judicial review "is a qualitative review in which each piece of relevant evidence is considered in relationship to all other evidence in the record."  There, the Court noted, however, that in the underlying opinion, the ALJ had applied "his own amorphous impressions, gleaned from the record and from his evaluations of appellant's credibility, that appellant was a malingerer who, given her education, surely would be able to do sedentary work but for her malingering." See also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (holding that an ALJ may only reject a treating physician's opinion on the basis of contradictory medical evidence not due to his or her own speculation or lay opinion).  Because this Court is satisfied that the ALJ has not inserted speculation or lay opinion into his decision, we assess only whether the decision rests on application of the proper legal standards and is supported by "substantial evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

### B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then he or she is not disabled, and the inquiry ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends, and benefits must be denied. See id.

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must decide if the claimant has the "residual

functional capacity" ("RFC") to perform his past relevant work. 20 C.F.R. § 416.920(e). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

At the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [his] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II.   BACKGROUND

### A. Background and Medical History

In October 2019, Plaintiff filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income. Tr. 56, 63. These claims were initially denied on May 20, 2020, and then again on reconsideration on August 14, 2020. Id. at 68-69, 70-71. Plaintiff was 43 years old at the time of his alleged onset, and 46 years old at the time of his filing. Id. at 56, 63. Plaintiff alleged disabilities due to anxiety, depression, and post-traumatic stress disorder. Id. Plaintiff has an eleventh-grade education and has work experience as an electrician and a landscaper. Id. at 248-249.

On October 2, 2017, Plaintiff underwent a psychiatric evaluation at Cura, Inc.("Cura") as a part of drug court probation. Id. at 1119. The evaluation reflected that the Plaintiff used various drugs and appeared comfortable and appropriately behaved with normal speech, but he had a depressed and empty mood. Id. at 1121. On January 17, 2019, Cura completed another evaluation. Id. at 362-366. This time, the report noted Plaintiff was angry, depressed, and anxious with delusional thoughts,[2] but still possessed a comfortable disposition and appropriate behavior. Tr.

---

[2] Plaintiff's delusional thoughts were self-reported and began when Plaintiff was 33 years old. Tr. 366; Def. Br. 4.

365-367.  Despite Plaintiff's apparent discharge in April 2019, the medical records indicate that Plaintiff was scheduled to remain in Cura's care until July 2019.  Id. at 375.

From October 2019 to September 2020, Plaintiff began substance abuse counseling at CarePlus NJ, Inc. ("CarePlus").  Id. at 913.  He first met with Wendy Park, LCSW.  Id. at 948. Ms. Park's evaluations initially noted Plaintiff's mood ranged from euthymic to anxious.  In February 2020, Plaintiff chose to resume medication to treat anxiety and requested a psychiatric evaluation.  Id. at 587.  Around that same time, Plaintiff underwent a state agency requested consultative examination with Paulette Sabol, Ph.D.  Id. at 420.  Plaintiff drove himself to the appointment where he reported trouble maintaining employment because he had difficulty tolerating discipline from supervisors.  Id.

Plaintiff reported to Dr. Sabol that he could go out by himself, but spent his days watching television, walking, and going to drug court meetings.  Id. at 422.  Dr. Sabol noted in her report that Plaintiff was last able to work in 2017 for about one month, but had recently spent time in jail or rehabilitation programs for his substance abuse.  Id. at 420.  Plaintiff also informed Dr. Sabol that he had difficulty maintaining employment because he was unable to tolerate irritable supervisors.  Id.

In February 2020, state agency psychologist Cheryl Sanford, Ph.D., reviewed Plaintiff's record and completed a psychiatric review indicating that Plaintiff had moderate limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing himself, and mild limitations in interacting with others.  Id. at 64-66.  That same month, Plaintiff began treatment with Psychiatric Nurse Practitioner Ellery Tarife ("APN Tarife") at CarePlus.  Id. a 539.  APN Tarife treated Plaintiff for approximately seven

5

months.  Id. 454-681.  Plaintiff informed APN Tarife that he lived with his girlfriend and was on probation for drug possession and distribution.  Id. at 539, 540.

APN Tarife initially diagnosed Plaintiff with PTSD, depressive disorder, polysubstance abuse in remission, and learning disability by history.  Id. at 11, 422.  In the summer of 2020, after numerous sessions with APN Tarife, Plaintiff reported that the medications APN Tarife prescribed were helping his anxiety and he had no concerns about depression, so he was looking to reduce his visits.  Id. at 860.  Soon after, Plaintiff requested APN Tarife complete disability paperwork for him since he had difficulty working due to his Post Traumatic Stress Disorder ("PTSD").  Id. at 869.

In June 2020, Steven B. Reed, Ph.D., a state agency psychologist, reviewed Plaintiff's record on reconsideration.  Id. at 75-76.  Dr. Reed reported that although the record noted "limitations in memory and concentration," Plaintiff's previous cognitive screening documented only "moderate impairment."  Id. at 78.  Dr. Reed also cited Dr. Sanford's statement that Plaintiff "was able to follow simple multistep directions," and concluded that the totality of evidence revealed that Plaintiff had the ability to "understand, remember, execute 2-step instructions, and sustain concentration, persistence and pace to perform simple routine tasks."  Id. at 78.  Dr. Reed also analyzed Plaintiff's mental RFC, for which he assessed Plaintiff to have moderate limitations in social functioning.  Id. at 77-78.

In November 2020, APN Tarife completed an evaluation regarding Plaintiff's ability to do work-related activities where he marked that, despite Plaintiff's work history and the findings of other evaluations, Plaintiff had extreme limitations in understanding, remembering, and carrying out instructions because he was determined to be educationally handicapped in 1990.  Id. at 1118-1122.  APN Tarife found that this clinical history, combined with Plaintiff's PTSD and anxiety,

made it difficult for Plaintiff to act appropriately. Id. at 1126. Finally, in March 2021, APN Tarife wrote a letter on Plaintiff's behalf to the Social Security Administration that noted Plaintiff has difficulty working with others and keeping a job because of his conditions. Id. at 11.

**B. Hearing Testimony**

On December 9, 2020, ALJ Kenneally held a hearing where Plaintiff and a Vocational Expert testified. Tr. 38-55. At the hearing, Plaintiff was represented by counsel. Id. at 39-55. Plaintiff discussed his education, stating that he spent time in special education, reached the eleventh grade, and read at a fourth-grade level. Id. at 46. He testified that he was diagnosed with carpal tunnel syndrome; had severe nerve damage in his wrists, neck, and arms; and was limited to the positions he could sleep in because of these ailments. Id. Plaintiff testified that he often slept only two hours at a time. Id. at 45.

He stated he last worked in landscaping in December 2017 and previously worked as an electrician. Id. at 42-43. Plaintiff explained that he stopped working "due to memory problems and making too many mistakes." Tr. 26. Plaintiff testified that he was currently unable to work since his social anxiety prevented him from interacting with others. Id. at 43-44. He noted that he also had difficulty remembering what he was supposed to do and made a lot of mistakes. Id. at 43. He stated that he worked with several different companies through the years, but had to stop working because of nerve damage in his wrists. Id. He testified that he struggles with instructions due to his trouble concentrating and difficulty remembering. Id.

Plaintiff further testified that he had trouble lifting and did not do laundry, but he could go on long walks, shower, and make certain meals for himself. Id. at 47-48. Plaintiff further stated that he avoids shopping at the mall and cannot stay in public situations for long. Id. at 44. He also stated that he likes to leave the house to get fresh air, but noted that he has good and bad days. Id.

7

Plaintiff testified that he had issues with drugs and alcohol, but that he no longer used them and is tested for them quite often as part of drug court. Id. at 45. He noted, however, that he relapsed in January 2020 and drank alcohol a few times.[3] Id.

A Vocational Expert also testified on Plaintiff's behalf. Id. at 49. She began by attesting to her qualifications and stating that she reviewed Plaintiff's file. Id. The ALJ posed a series of hypothetical questions regarding a person of Plaintiff's age, education, and work history who could perform the full range of light work defined in the regulations, but who could occasionally push/pull and operate hand controls with bilateral upper extremities. Id. at 51. The hypothetical individual could reach overhead in all directions; handle, finger, and feel with bilateral upper extremities; frequently climb ramps and stairs, but never ropes, ladders, or scaffolds. Id. The individual could never be exposed to unprotected heights, moving mechanical parts, or operating motor vehicles. Id. The individual could only occasionally be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, or extreme heat. Finally, the individual was limited to performing simple, routine tasks and making simple work-related decisions but could frequently interact with the general public, coworkers, and supervisors. Id.

In addition, the Vocational Expert testified that the hypothetical individual could not perform past work as a landscaper or electrician because of the exertion and skill level required. Id. She stated that despite the hypothetical individual's limitations, work as a furniture rental clerk or a tanning salon attendant would be possible. Id. at 52.

The ALJ posed a second hypothetical where all variables remained the same, except the hypothetical individual was only able to occasionally interact with the general public. Id. The Vocational Expert testified that with this added limitation, the hypothetical individual would be

---

[3] The hearing was held in December 2020, the record does not reflect when the alcohol relapses happened, but Plaintiff stated that they happened "recently." Tr. 45.

8

unable to perform the previously available jobs. Id. at 53. She stated that the individual would be able to work instead as a blending tank tender helper. Id. Finally, the ALJ posed a third hypothetical where the individual remained the same as the second hypothetical, but in addition to normal breaks would be off task for twenty percent of a normal workday. Id. In this case, the Vocational Expert testified that no jobs would be available for this hypothetical person. Id. at 54.

### C. ALJ Decision

On January 7, 2021, the ALJ issued an opinion finding that Plaintiff was not disabled under the Act. Tr. 17-32. The ALJ concluded that Plaintiff was not disabled under the Act's five-step framework. 20 C.F.R. § 416.920.

At step one, the ALJ found that Plaintiff is not engaged in substantial gainful activity. Tr. 22. At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, cervical spine radiculopathy, asthma, obesity, learning disorder, major depression disorder, generalized anxiety disorder, posttraumatic stress disorder, and opioid use disorder in remission. Id. The ALJ found that these impairments did "significantly limit [Plaintiff's] ability to perform basic work activities." Id. at 23. But the inquiry at step-two is "a de minimis screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).

At step three, the ALJ found that the Plaintiff did not meet the standard required by the Listing because, in his view, the record did not reflect the requisite type of severity to meet the standard under Listings 1.02, 1.04, 3.03, 12.02, 12.04, 12.06, and 12.15. Tr. 23. Plaintiff does not challenge this finding.

Prior to the fourth step, the Commissioner must determine the claimant's "residual functional capacity" ("RFC") to perform work activities despite the limitations from the claimant's

9

impairments. 20 C.F.R. §§ 416.920(e); 416.945. The Commissioner must consider "all relevant medical and other evidence" in the claimant's record to determine if the claimant has the RFC to perform his past relevant work. 20 C.F.R. § 416.920(e), (f). If the claimant can perform that work, then the claim for benefits must be denied. 20 C.F.R. 416.960(b)(3).

The ALJ found Plaintiff's residual functional capacity to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally push, pull, and operate hand controls with the bilateral upper extremities. He can frequently reach overhead and in all directions with the bilateral upper extremities. He can frequently handle, finger, and feel with the non-dominant right upper extremity. He can frequently climb ramps and stairs. He can never climb ropes, ladders, scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle. He can only have occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold and extreme heat. He is limited to performing simple routine tasks and making simple work related decisions. He can frequently interact with the general public, co-workers, and supervisors.

Id. at 25. In reaching this determination, the ALJ evaluated medical evidence and testimony from the record and provided reasoning for his opinion. See, e.g., id. at 26 (acknowledging Plaintiff's limitations caused by bilateral carpal tunnel syndrome as treated by both Drs. Levin and Shah); id. (acknowledging Plaintiff's asthma diagnosed by Dr. Weiss); id. at 27 (analyzing Plaintiff's history with psychiatric issues ranging from a learning disability diagnosis to being first evaluated by a psychiatrist at age 27).

The ALJ concluded that Plaintiff was unable to perform any past relevant work. Id. at 30. The Vocational Expert characterized an electrician as skilled work requiring medium exertion and a landscaper is unskilled heavy work. Id. Accordingly, because of his limitations, the ALJ found Plaintiff unable to perform the jobs he was previously able to perform. Id.

10

Finally, at step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Because Plaintiff is a younger individual (ages 18-49), has some education, and work experience with some RFC, the Vocational Expert testified that Plaintiff would be able to perform jobs such as a furniture rental clerk, counter clerk, and tanning salon attendant. Id. at 31. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act. Id.

Following the ALJ's decision, an Appeals Council denied Plaintiff's request to review his application. Id. at 1. Plaintiff thereafter filed his Complaint in this Court on November 18, 2021. ECF No. 1. He now contends that because the ALJ failed to properly evaluate the medical opinions of APN Tarife and Dr. Reed, and as such, the RFC determination is not supported by substantial evidence. Pl. Br. at 11-20.

## III. ANALYSIS

As noted, Plaintiff argues that the ALJ's conclusion as to Plaintiff's RFC was "not supported by substantial evidence and is the product of legal error because he failed to properly evaluate the opinion of NP Ellery Tarife." Pl. Br. at 12. Specifically, Plaintiff contends that since ALJ Kenneally did not account for the extreme limitations diagnosed by APN Tarife in November 2020, and because he failed to mention APN Tarife by name, the ALJ could not have properly evaluated APN Tarife's medical opinion. Id. Plaintiff further argues that the ALJ failed to consider the social functioning limitations identified by state agency psychologist, Dr. Reed, as part of Plaintiff's RFC. Id. at 17-20. For the reasons explained below, the Court disagrees with both of Plaintiff's arguments.

A claimant's RFC is the most that the claimant can do despite his limitations, 20 C.F.R. § 404.1545(a)(1), and the ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§

11

404.1527(e), 404.1546(c); Chandler, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). In determining a plaintiff's RFC, the ALJ must make "a complete assessment of the claimant's physical and mental functional limitations based on relevant medical and nonmedical evidence of a claimant's impairments." Harris v. Comm'r of Soc. Sec., No. 11-2961, 2012 WL 4504486, at *7 (D.N.J. Sept. 27, 2012); 20 C.F.R. § 416.945(a)(2). The ALJ "need only include in the RFC those limitations which he finds to be credible." Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007). However, "[a] claimant's RFC should adequately reflect his or her 'credibly established limitations,' especially when later used as the basis for a vocational expert hypothetical." Sudler v. Comm'r of Soc. Sec., 827 F. App'x 241, 245 (3d Cir. 2020).

Given this discretion, the ALJ must explain what evidence he chooses to credit and to what extent, and what evidence he does not credit and why. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) (stating that the ALJ must provide "an expression of the evidence s/he considered which supports the result, but also some indication of the evidence that was rejected"); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) ("[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects"). "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC." Salles, 229 F. App'x at 147.

The ALJ may not, however, "reject evidence of a limitation for an unsupported reason," Zirnsak v. Colvin, 777 F.3d 607, 615 (3d Cir. 2014), and he "'is not free to employ his/her own expertise against that of a physician who presents competent medical evidence.'" Yensick v Barnhart, 245 F. App'x 176, 181 (3d Cir. 2007) (quoting Plummer, 186 F.3d at 429). In evaluating whether substantial evidence supports the ALJ's findings, "leniency [should] be shown in

12

establishing the claimant's disability, and that the Secretary's responsibility to rebut it [should] be strictly construed . . ." Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted).

Here, the Court is satisfied that the ALJ provided a comprehensive analysis of each of the medically determinable impairments from which Plaintiff suffered and explained his reasoning behind crediting certain evidence. Tr. 20-32. The ALJ's analysis was supported by extensive citations to the objective medical evidence within the Administrative Transcript and complied with the requirement that an RFC determination be accompanied by "specific references to evidence of record in support of assessed limitations." 20 CFR 404.1545.

First, Plaintiff contends that the ALJ's decision was inadequate because it "does not comport with the mandates of the regulations or the law of this Circuit." Pl. Br. 13. In support, Plaintiff points to the Social Security Administration's adoption of new rules for claims filed after March 27, 2017. 82 Fed. Reg. 5844 (Jan. 18, 2017). This new framework requires an ALJ to consider supportability, consistency, and specialization of the medical source. 20 C.F.R. § 404.1520c(c).[4] However, under the exact language of the regulation, "[ALJs] are not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually." Def. Br. 15. As outlined below, the ALJ's analysis conformed with the new regulatory scheme, and properly weighed objective medical evidence in the record.

---

[4] The revised regulations explain supportability as: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Consistency is defined as: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Specialization means that "[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty." 20 C.F.R. § 404.1520c(c)(4).

The ALJ based his opinion primarily on supportability and consistency. First, the ALJ determined that APN Tarife's opinion was not persuasive because it was inconsistent with other medical evidence in the record, none of which categorized Plaintiff's impairments as "extreme." Tr. 29; see also id. at 61 (reporting that Plaintiff's concentration and persistence limitations ranged from "not significantly limited" to "at most moderately limited"); id. at 86 (Plaintiff's ability to remember locations and work-like procedures was not significantly limited); id. at 936 (reporting that Plaintiff exhibited signs of mild depression on visits from February 2020 to July 2020).

On this point, the ALJ's opinion is substantiated by objective medical evaluations in the record that establish APN Tarife's opinion regarding were inconsistent with other diagnoses of Plaintiff's condition, as well as Plaintiff's own subjective reports regarding his mental capacity. For example, notes from sessions with Ms. Park indicate that Plaintiff's mood offered arrived at sessions "euthymic with constrictive affect and linear thought process." Id. at 562; 579; 607; 636; 639; 642. Ms. Park also occasionally reported Plaintiff as "anxious" or "somewhat anxious," but "calm" on others. See, e.g., id. at 613; 617; 621; 645; 657; 665; 673; 677; 681. Further, throughout his treatment with Ms. Park, Plaintiff remained "receptive to recovery strategies" and coping tools. Id. at 568, 571. In addition, Plaintiff's self-reporting suggested improvement and in early April 2020 when he reported "decreased anxiety" and denied any recovery-related concerns. Id. at 645. Plaintiff also reported he was acclimating to life in the community after spending time in jail, and told Ms. Park that he "wishe[d] he could start working again soon." Id. at 559.

APN Tarife's findings were also inconsistent with Dr. Sabol's report from February 2020. Dr. Sabol reported Plaintiff was "cooperative and respectful" on their visit. Id. at 421. Dr. Sabol also noted Plaintiff was alert and able to walk normally, with intact motor skills. Id. Finally, despite diagnosing Plaintiff with PTSD, general depressive disorder, polysubstance use disorder

in remission, and a learning disability by history, Dr. Sabol found Plaintiff's thought processes to be logical and goal-directed, and concluded that Plaintiff had sound judgment. Id. at 421-22.

Moreover, APN Tarife himself observed that Plaintiff was pleasant with intact attention and normal psychomotor activity, and he demonstrated "clear and logical thought processes." Id. at 792; 802; 812; 822; 832; 842; 862; 898. In addition, Plaintiff's anxiety improved with medication throughout his time with APN Tarife, and he told APN Tarife that his mood "continued to be stable." Id. at 498, 507, 517. Although Plaintiff reported increased irritability and anxiousness, id. at 527, APN Tarife increased the dosage for one of his medications, and at their next session, Plaintiff reported that it had "greatly helped." Id. at 537. Plaintiff also met with APN Tarife for a session with his girlfriend present, during which he reported that his recovery was his priority at the time. Id. at 559.

Despite these findings, APN Tarife's November 2020 evaluation regarding Plaintiff's ability to do work-related activities highlighted Plaintiff's limited social skills that began when he was in middle and high school, and he had been classified as educationally handicapped in 1990. Id. at 1125. The evaluation also characterized Plaintiff's impairments as "extreme," affecting his ability to understand and remember instructions, and make simple and complex judgments. Id. at 1126. APN Tarife also noted that Plaintiff had "marked limitation with interacting appropriately with supervisors, coworkers, and the public." Id.

The ALJ explained that he did not find these conclusions to be consistent with other medical evaluations. The ALJ noted that APN Tarife's opinion was "far more restrictive than indicated by the objective and treating evidence of record, which demonstrates anxiety, depression, learning disorder, and substance addiction impairments with persistent symptoms that are moderate at most in nature." Id. at 29. Neither did APN Tarife's letter "adequately consider

15

[Plaintiff's] self-reported retained mental capacity to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt and manage himself despite his severe psychiatric impairments." Id. Indeed, APN Tarife's conclusions are inconsistent with his own findings that Plaintiff had "clear and logical thought processes," as well as Dr. Sabol's finding that Plaintiff had "sound judgment."

The Court is satisfied that the ALJ provided clear reasoning as to why he discredited APN Tarife's medical opinion. Tr. 29. In addition, Plaintiff's argument regarding the ALJ's failure to mention APN Tarife by name is without merit. See Arroyo v. Comm'r of Soc. Sec., 82 F. App'x 765, 768 (3d Cir. 2003) (concluding that the ALJ's decision was adequate where he supported his conclusion with documentary evidence, even though he did not address a doctor's medical opinion by name). The ALJ referred to APN Tarife as a "treating source," and addressed the content of the November 2020 evaluation in which APN Tarife noted Plaintiff's "extreme limitation with simple and complex tasks and decision-making, and marked limitation with interacting appropriately with supervisors, coworkers, and the public." Tr. 29. The ALJ was not required to refer to APN Tarife by name. See Millan v. Comm'r of Soc. Sec., No. 09-1065, 2010 WL 1372421, at *10 (D.N.J. Mar. 31, 2010) ("The ALJ need not address a physician's report by name if the ALJ, when appropriate, includes "a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so a reviewing court may know the basis for the decision." (quoting Arroyo, 82 F. App'x at 768)).

Finally, with respect to Plaintiff's argument regarding Dr. Reed's analysis, the ALJ determined that Plaintiff was more limited than Dr. Reed concluded. Dr. Reed assessed only moderate functional limitations in Plaintiff's social interaction abilities, and affirmed Dr. Sanford's finding indicating that Plaintiff retained the ability to comprehend and execute two step

instructions, and sustain concentration for simple, routine tasks.  Tr. 61, 78.  The ALJ, however, accounted for Plaintiff's social limitations in the RFC by limiting him to jobs that require only "simple routine tasks and making simple work-related decisions."  Id. at 25.  ALJ Kenneally also concluded that Plaintiff could work a job that required "frequent[] interact[ion] with the general public, co-workers, and supervisors," rather than constant interaction.  Id.  The ALJ explained this finding, stating that he found the "state agency mental consultant opinions" not to be persuasive because they were "less restrictive than indicated by the evidence regarding the claimant's capacity for interacting with others, and their assessment as the claimant's substance addition disorder as non-severe is not supported by the evidence."  Id. at 30.

On this basis, the Court cannot say that the ALJ's findings were conclusory.  Instead, they were supported by objective medical evidence in the record, and they meet the standard for substantial evidence, which does not require a preponderance.  McCrea, 370 F.3d at 360.  The ALJ's opinion contains sufficient evidence for a reasonable mind to "accept [it] as adequate." Ventura, 55 F.3d at 901, and the Court is therefore satisfied the RFC determination was not harmful legal error.

**IV.   CONCLUSION**

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED**.


Date: May 2, 2023                                  /s/ Madeline Cox Arleo
                                                   **Hon. Madeline Cox Arleo**
                                                   **UNITED STATES DISTRICT JUDGE**

17